UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HUSSEIN AL-RIKABI, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | 2:07-cr-00106-GZS |
| | ) | 2:13-cv-00268-GZS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## <u>RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION</u>

Hussein Al-Rikabi filed the pending motion pursuant to 28 U.S.C. § 2255 in July 2013.
(Motion, ECF No. 244.)  He seeks relief from his judgment of conviction of conspiracy to
distribute and possess with intent to distribute five grams or more of cocaine base[1] (count 1) and
two counts of distribution of five grams or more of a substance containing cocaine base (counts 2
and 3), in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), 846.  He asserts four grounds
in his section 2255 motion: (1) his sentence was calculated and imposed in violation of his right
to a jury trial, and he received ineffective assistance of counsel on this issue; (2) counsel was
ineffective for failing to properly challenge the court's findings as to drug type and quantity; (3)
counsel was ineffective for failing to seek relief under the safety valve statute; and (4) counsel
was ineffective for failing to move to suppress evidence obtained through an illegal search.
(Motion at 4-8.)  I recommend that the court deny the motion.

---

[1]    Cocaine base is also known as crack cocaine.

**Facts and Procedural History**

The facts and procedure are summarized by the First Circuit in the first of four appeals by Al-Rikabi. See United States v. Al-Rikabi, 606 F.3d 11, 12 (1st Cir. 2010). In March 2008, following a two-day trial, a jury found Al-Rikabi guilty of the charges. In May 2008, trial counsel was permitted to withdraw and new counsel was appointed. That counsel represented Al-Rikabi through sentencing and the first direct appeal. A third counsel represented Al-Rikabi through the second and third appeals, and he was pro se on the fourth appeal.

The initial sentencing hearing was held on two days in September and October 2008. In September, the court heard evidence on the drug quantity. Al-Rikabi, through counsel, did not object at sentencing to the finding that he was responsible for the smaller quantities reflected in the jury verdict. (Jury Verdict, ECF No. 108; Sentencing Tr. 9/2/2008 at 11, ECF No. 178.) However, counsel did object to the additional 200-gram drug quantity found at sentencing. (Sentencing Tr. 9/2/2008 at 6.) The court found by a preponderance of the evidence that Al-Rikabi was responsible for at least 200 grams of crack cocaine, based on the video confession of his supplier, Stephen Ramnath. (Sentencing Tr. 9/2/2008 at 18, 40, 45.) The court gave credence to Ramnath's confession rather than to his later testimony that identified a smaller amount. (Sentencing Tr. 9/2/2008 at 45.) In October 2008, at the conclusion of the second day of the hearing, the court ultimately found Al-Rikabi responsible for 217.3 grams of crack cocaine, resulting in a base offense level of 32 under the United States Sentencing Guidelines. (Sentencing Tr. 10/15/2008 at 10, ECF No. 179.) The court then increased the offense level by two points based on its finding that Al-Rikabi had a managerial role in the criminal activity. The court found that he belonged in criminal history category I, which, combined with the total offense level of 34, resulted in a guideline range of 151 to 188 months. The court sentenced Al-

Rikabi to a 151-month term of imprisonment on each of the three counts, to be served concurrently. (Judgment, ECF No. 170.) [2]

The court noted among its reasons for the sentence that Al-Rikabi gave what the court considered to be perjurious testimony at trial—testimony that "could easily have enhanced the guideline range in this case." (Sentencing Tr. 10/15/2008 at 11-12.) The court also noted inconsistencies in the statements Al-Rikabi provided in the sentencing process. These included statements about his mental health history. He told the probation officer he had no mental health problems and had never undergone a psychiatric hospitalization, according to the revised presentence investigation report. However, he later told the psychologist who evaluated him that he had been subjected to several forms of torture in his native country of Iraq during the Iran-Iraq war, he experienced hallucinations and other significant mental health effects of the torture, and he had undergone a psychiatric hospitalization as a result. The court concluded that Al-Rikabi was not entitled to a variant sentence, due to these inconsistencies and the court's inability as a result to determine what the truth was. (Sentencing Tr. 10/15/2008 at 12.)

In the first of Al-Rikabi's four appeals, he successfully challenged the finding that he exercised a managerial role. The First Circuit determined that the sentencing finding of a managerial role was not supported by the record and was clearly erroneous, and it vacated the sentence and remanded for resentencing. Id. at 16.

---

[2]     When Al-Rikabi was indicted and convicted under 21 U.S.C. § 841(b)(1)(B) for five grams or more of a mixture or substance containing cocaine base, section 841(b)(1)(B)(iii) referenced a quantity of five grams or more and carried a minimum term of imprisonment of five years. That subsection was later amended to change the quantity to 28 or more grams for the same minimum term. Fair Sentencing Act of 2010, P.L. 111-220, § 2(a)(2), 124 Stat. 2372. Correspondingly, when Al Rikabi was sentenced in 2008, section 841(b)(1)(A)(iii) referenced a quantity of 50 grams or more and carried a minimum term of imprisonment of 10 years. That subsection was later amended to change the quantity to 280 grams or more for the same minimum term. Fair Sentencing Act of 2010, P.L. 111-220, § 2(a)(1), 124 Stat. 2372. The quantities referenced in the indictment and conviction track the statute prior to the amendment. Al-Rikabi's sentencing exposure increased from a minimum of five years to a minimum of ten years when the sentencing court found that he was responsible for over 200 grams rather than the five or more grams found by the jury.

Following the remand, this court sentenced Al-Rikabi in July 2010 to a 121-month term

of imprisonment. (Sentencing Tr. 7/23/2010 at 8, ECF No. 200.) Al-Rikabi then filed his

second appeal. The First Circuit once again vacated the sentence and remanded the matter, this

time because it found the record ambiguous as to whether the district court had considered Al-

Rikabi's post-sentence rehabilitation arguments. United States v. Al-Rikabi, No. 10-1906 (1st

Cir. Aug. 1, 2011). The First Circuit noted that the July 2010 sentencing of Al-Rikabi took place

before the Supreme Court's decision in Pepper v. United States, 131 S. Ct. 1229 (Mar. 2, 2011),

which held that in resentencing a defendant after a remand, a court may take into account post-

sentence rehabilitation. Instead, this court had "relied on pre-existing precedent of this court and

sentencing guidelines providing that such considerations were improper." Al-Rikabi, No. 10-

1906, at 1-2 (citing United States v. Maldonado, 242 F.3d 1 (1st Cir. 2000)). The First Circuit

instructed that if this court had considered Al-Rikabi's arguments and rejected them on the

merits, it was "free to say so summarily and to reimpose the same sentence." Id. Alternatively,

if it had not, it could order any further proceedings it deemed appropriate. Id.

In the same judgment, the First Circuit, citing United States v. Goncalves, 642 F.3d 245

(1st Cir.), cert. denied, 132 S. Ct. 596 (2011), rejected Al-Rikabi's argument that he was entitled

to resentencing under the Fair Sentencing Act. Goncalves addressed one of the issues raised by

the transition from the old longer mandatory minimum sentences to the new shorter ones. In

Goncalves, as with Al-Rikabi, the defendant was sentenced before the effective date of the Fair

Sentencing Act. The First Circuit in Goncalves held that the Fair Sentencing Act is not

retroactive to cases in which the crime occurred before the effective date of the statute. The

Court reasoned that the general federal savings statute, 1 U.S.C. § 109, governs retroactivity of

the Fair Sentencing Act and establishes that "the dividing line is the date of the crime" for

purposes of determining whether a sentence imposed before the Fair Sentencing Act could be challenged. Goncalves, 642 F.3d at 253. In Goncalves, the First Circuit explicitly left open the issue of what should happen when a defendant committed the crime before the effective date of the Fair Sentencing Act but was sentenced afterwards. 642 F.3d at 252 n.5. That question, however, did not apply to Al-Rikabi because in his case both the crime and the sentencing took place before the statute's effective date. Thus, under Goncalves, Al-Rikabi had no Fair Sentencing Act claim. See id. at 252-53.

In deciding Al-Rikabi's second appeal, the First Circuit also added that "to the extent, if any, that defendant-appellant may be eligible to derive some benefit from the recent decision of the United States Sentencing Commission giving retroactive effect to the November 1, 2011 guideline amendments for crack cocaine offenses, that relief must be first pursued in the district court." Al-Rikabi, No. 10-1906.

Following the First Circuit's remand after the second appeal, this court entered an order in August 2011 stating that it had considered Al-Rikabi's argument concerning post-sentence rehabilitation when it sentenced him in July 2010 to 121 months of imprisonment. This court noted that it concluded in July 2010 that no change was appropriate on that basis. (ECF No. 202.) In August 2011, this court entered a second amended judgment with a sentence of 121 months of imprisonment. (ECF No. 203.)

Al-Rikabi filed his third appeal. He then filed a motion in this court to reduce the sentence, pursuant to 18 U.S.C. § 3582(c)(2). (ECF No. 218.) This court denied his motion without prejudice for lack of jurisdiction, based on the then-pending appeal. (ECF No. 228.) In March 2012, the First Circuit affirmed this court's summary re-imposition of the 121-month sentence. United States v. Al-Rikabi, No. 11-1926 (1st Cir. Mar. 20, 2012). It rejected Al-

Rikabi's argument that he was entitled to the new lower mandatory minimum under the reasoning of United States v. Douglas, 644 F.3d 39 (1st Cir. 2011). Douglas, like Goncalves, addressed an issue concerning the timing of the date of the defendant's sentencing in relation to the effective date of the Fair Sentencing Act. The defendant in Douglas was sentenced after both the effective date of the Fair Sentencing Act and the Congressionally-imposed effective date of the corresponding changes to the United States Sentencing Guidelines. The First Circuit held that even though the crime in Douglas was committed before the Fair Sentencing Act went into effect, the federal savings clause did not bar the application of the new lower minimum terms in sentences imposed after the sentencing guidelines were correspondingly modified. The Court reasoned that Congress intended to override the federal savings clause when it directed the Sentencing Commission to incorporate the new statutory lower minimum terms into the sentencing guidelines and make the change effective by a date certain. Id. at 41-42. The First Circuit held that Douglas was inapposite to Al-Rikabi's re-sentencing because this court did not actually re-open the sentencing of Al-Rikabi after the second remand. Al-Rikabi, No. 11-1926 (citing United States v. Bryant, 643 F.3d 28, 33 (1st Cir. 2011)). In October 2012, the Supreme Court denied Al-Rikabi's petition for a writ of certiorari. (Al-Rikabi v. United States, No. 11-10825 (Oct. 1, 2012)).

Meanwhile, Al-Rikabi filed a renewed motion under 18 U.S.C. § 3582(c) to reduce the sentence pursuant to the Fair Sentencing Act, and this court denied the motion. (ECF Nos. 233, 234.) Al-Rikabi then filed his fourth appeal. (ECF No. 236.) The First Circuit affirmed. (United States v. Al-Rikabi, No. 12-1706 (Feb. 4, 2013)). It reiterated its prior holding that Al-Rikabi's claim under the Fair Sentencing Act is foreclosed under Goncalves, 642 F.3d 245. It also rejected Al-Rikabi's challenge to this court's discretionary denial of relief. The Court noted

that Al-Rikabi remained subject to a pre-Fair Sentencing Act mandatory minimum sentence of 120 months and received a sentence of 121 months. It held that this court did not abuse its discretion in declining to reduce Al-Rikabi's sentence by one month.

In July 2013, Al-Rikabi filed a timely motion pursuant to 28 U.S.C. § 2255. I ordered the government to respond. Al-Rikabi replied to the government's response.

## Legal Standards

A person may move to vacate his or her sentence on four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994). Because this case concerns the right to a jury trial and the right to effective assistance of counsel, and these rights stem from the Sixth Amendment of the United States Constitution, this case concerns the first of these four grounds.

The burden is on the section 2255 movant to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. David v. United States, 134 F.3d 470, 474 (1st Cir. 1998); United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

> Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing "is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case."

Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting DiCarlo, 575 F.2d at 954 (quotation marks omitted)).

When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."  United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

## Discussion

### 1. The Right to a Jury Trial to Determine Drug Quantity and Related Claim of Ineffective Assistance

Al-Rikabi argues that (1) he was deprived of a Sixth Amendment right to have a jury determine the quantity of drugs for which he was ultimately held accountable, and (2) he received ineffective assistance of counsel on this issue.  The jury had found him guilty with respect to just five or more grams of crack cocaine, which was the amount stated in the indictment, whereas the court found at sentencing that Al-Rikabi was responsible for about 200 additional grams of crack cocaine.  Al-Rikabi argued at his resentencing hearing in July 2010 that he had been deprived of a jury right as regards the sentencing finding of quantity. (Sentencing Tr. 7/23/2010 at 4, 6.)  However, counsel did not make the argument in Al-Rikabi's first direct appeal, and therefore the issue is procedurally defaulted and "could be excused only by satisfying the 'cause and prejudice' standard."  See Bucci v. United States, 662 F.3d 18, 28-29 & n.10 (1st Cir. 2011) (quoting Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004)).

As to the right to a jury trial on the drug quantity finding, Al-Rikabi makes two arguments.  One is that Alleyne v. United States, 133 S. Ct. 2151 (2013), which was decided long after Al-Rikabi was resentenced, should be considered retroactively applicable to his sentence.  The other, which is Al-Rikabi's primary point, is that even before Alleyne was decided, the reasoning set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), granted a right to a jury trial to determine any fact, including drug quantity, that raised either the statutory

minimum or the statutory maximum mandatory sentence. (Motion at 9-14; Reply at 1-4, ECF No. 252.) I address each of these arguments in turn.

### a. Retroactivity of Alleyne

In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155 (emphasis added). In so holding, the Supreme Court explicitly overruled Harris v. United States, 536 U.S. 545 (2002). The holding in Alleyne is recognized as an extension of the Court's holding in Apprendi. As the plurality explained in Alleyne, the Court held in Apprendi that "any fact that increased the prescribed statutory maximum sentence must be an 'element' of the offense to be found by the jury." Alleyne, 133 S. Ct. at 2157 (emphasis added) (citing Apprendi, 530 U.S. at 483, n.10, 490).

Al-Rikabi is correct that if Alleyne were retroactive, it likely would apply to his situation, which involved sentencing facts that increased the statutory minimum sentence from five years to ten. See supra note 2. However, to my knowledge, Alleyne has not been applied retroactively by any court that has considered the issue. The First Circuit has not yet decided this issue. See United States v. Doe, 2013 WL 6697824, at *13-14, 2013 U.S. App. Lexis 25456, at *39-41 (1st Cir. Dec. 20, 2013) (noting that the Court would "leave an exhaustive treatment of Alleyne for an appropriate case" and holding that Alleyne did not apply because the judicial factfinding in Doe did not "trigger a mandatory minimum punishment or alter a statutory maximum"). The First Circuit had previously held that the earlier Supreme Court case of Apprendi "'prescribes a new rule of criminal procedure,'" but that it "may not be applied retroactively to cases on collateral review." Marquez v. United States, 91 F. App'x 162, 162 (1st Cir. 2004) (quoting Sepulveda v. United States, 330 F.3d 55, 63 (1st Cir. 2003)).

I conclude that the First Circuit's reasoning in <u>Sepulveda</u> concerning <u>Apprendi</u>, when applied to <u>Alleyne</u>, should yield the same result, i.e., that <u>Alleyne</u>, like <u>Apprendi</u>, is not retroactively applicable to cases on collateral review. <u>See Sepulveda</u>, 330 F.3d at 59-63. In <u>Sepulveda</u>, the First Circuit applied the Supreme Court's analysis in <u>Teague v. Lane</u>, 489 U.S. 288 (1989), to determine whether <u>Apprendi</u> should apply retroactively. As the First Circuit explained, the Supreme Court's holding in <u>Teague</u> generally bars the retroactive application of new rules of criminal procedure, but allows for two exceptions. <u>Sepulveda</u>, 330 F.3d at 59. "The first allows retroactive application of new rules that either (a) prohibit criminal punishment for certain types of primary conduct, or (b) forbid the imposition of certain categories of punishment for particular classes of defendants." <u>Id.</u> The First Circuit held that this exception did not apply to <u>Apprendi</u> because it "neither places any particular type of conduct beyond the reach of the criminal law nor pretermits any particular type of punishment for a specific class of defendants." <u>Sepulveda</u>, 330 F.3d at 59. <u>Alleyne</u>, like <u>Apprendi</u>, does not de-criminalize any conduct, nor does it forbid certain categories of punishment for certain classes of defendants. I therefore conclude that the first of the two <u>Teague</u> exceptions does not apply.

The second <u>Teague</u> exception is for "'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" <u>Sepulveda</u>, 330 F.3d at 59 (quoting <u>Graham v. Collins</u>, 506 U.S. 461, 478 (1993) (quotation marks omitted)). The Supreme Court has defined a watershed rule of criminal procedure as one that, if infringed, "'must seriously diminish the likelihood of obtaining an accurate conviction.'" <u>Id.</u> (quoting <u>Tyler v. Cain</u>, 533 U.S. 656, 665 (2001) (quotation marks omitted)). In addition, "the new rule must itself alter the accepted understanding of the bedrock procedural elements essential to the integrity and fairness of a criminal proceeding." <u>Id.</u> (citing <u>Tyler</u>, 533 U.S. at 665).

In Sepulveda, the First Circuit concluded that Apprendi did not announce a watershed rule of criminal procedure, noting that "[t]he rule that [Apprendi] announces merely assures a previously convicted defendant that increased punishment, over and above the default statutory maximum, can only be imposed if the factual predicate for the increase—other than a prior criminal conviction—is confirmed by a jury to a higher quantum of proof." Id. at 61 (citing Apprendi, 530 U.S. at 484). "Hence, we join every court of appeals that thus far has decided the question and hold that the Apprendi rule fails to qualify as a watershed rule within the meaning of the second Teague exception." Id. I see no reason why the rule announced in Alleyne would be deemed to be a watershed rule of criminal procedure when the rule announced in Apprendi was not. Rather, the rule announced in Alleyne, coming after Apprendi, would have if anything even less claim to status as a watershed rule.

Other circuit courts that have addressed Alleyne have held that it is not retroactive to cases on collateral review. See In re Payne, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (noting that the Supreme Court has not held that Alleyne is retroactive to cases on collateral review, for purposes of meeting the requirements for second and successive habeas motions under section 2255(h)(2)); Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013) (same). Likewise, other district courts that have addressed the retroactivity issue have noted that Alleyne has not been given retroactive effect. See, e.g., Blick v. United States, Civ. No. WDQ-12-3244, Crim. No. 05-310, 2013 WL 5883805, at *2, 2013 U.S. Dist. Lexis 155756, at *6-7 (D. Md. Oct. 30, 2013) (citing Payne and Simpson, and collecting district court cases); United States v. Stanley, No. 09-CR-0022-JHP, 2013 WL 3752126, at *7, 2013 U.S. Dist. Lexis 98943, at *20-21 (N.D. Okla. July 16, 2013) (citing Teague, 489 U.S. at 303); United States v. Eziolisa, No. 3:10-cr-039, 2013 WL 5657842, 2013 U.S. Dist. Lexis 148835 (S.D. Ohio, Oct. 16, 2013) (holding, by

adopting a report and recommended decision, that the petitioner's section 2255 motion was time-barred because Alleyne is not retroactive under Teague analysis, and denying a certificate of appealability on the basis that an appeal of this issue would be "objectively frivolous"); Affolter v. United States, No. 4:13 CV 01413, 2013 WL 4094366, at *1, 2013 U.S. Dist. Lexis 113709, at *1-3 (E.D. Mo. Aug. 13, 2013) (holding that the petitioner's section 2255 motion was time-barred because Alleyne is not retroactive); United States v. Reyes, Crim. No. 06-654-1, Civ. No. 11-6234, 2013 WL 4042508, at *19, 2013 U.S. Dist. Lexis 112386, at *55-59 (E.D. Pa. Aug. 8, 2013) (same, but granting a certificate of appealability because the Third Circuit had not yet had occasion to address the issue).

### b. Applicability of __Apprendi__ Independent of __Alleyne__

Al-Rikabi, probably realizing that his argument that Alleyne applies retroactively has been uniformly unsuccessful in other cases, presents an alternative. He argues that his right to a jury trial actually derives from Apprendi rather than Alleyne. Because Apprendi was decided before he was sentenced, he has no need of any retroactive effect if the court were to interpret Apprendi to grant a right to a jury trial in his circumstances. (Reply at 3.) He correctly points out that the Court explained in Alleyne that "the principle applied in Apprendi applies with equal force to facts increasing the mandatory minimum." Alleyne, 133 S. Ct. at 2160. However, a complete reading of Alleyne makes it clear that the state of the law before Alleyne and at the time of Al-Rikabi's sentencing was expressed in Harris, which was decided in 2002. Alleyne, 133 S. Ct. at 2155, 2160 ("Harris drew a distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum."). In Harris, the Court held that Apprendi was limited to facts that increased the statutory maximum and did not apply to facts that increased the statutory minimum. Alleyne, 133 S. Ct. at 2160; Harris, 536 U.S. at 557.

Harris, and Alleyne's overruling of Harris, stands in the way of Al-Rikabi's argument that

Alleyne does nothing more than explain the holding of Apprendi. Alleyne does not support Al-

Rikabi's argument that his jury trial right stems from Apprendi. The right to a jury trial on facts

that increase a statutory mandatory minimum stems from Alleyne, not Apprendi. Because

Alleyne is not retroactive, Al-Rikabi is not entitled to relief on his claim that he has a right to a

jury trial on the issue of drug quantity.

### c. Ineffective Assistance as to the Right to a Jury Trial on Drug Quantity

As to Al-Rikabi's related ineffective assistance claim, he cannot demonstrate that

"counsel's representation fell below an objective standard of reasonableness and that there exists

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012);

Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel is not deficient for failing to press

an issue that would have been considered lacking in merit based on well-established precedent.

See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (noting that "this Court has never

required defense counsel to pursue every claim or defense, regardless of its merit, viability, or

realistic chance for success").

At the time of Al-Rikabi's first direct appeal, the First Circuit's holding in United States

v. Goodine, 326 F.3d 26 (1st Cir. 2003), was still good law, and Goodine is cited in Doe, 2013

WL 6697824, at *13, 2013 U.S. App. Lexis 25456, at *40. In Goodine, the Court held that "drug

quantity for purposes of [21 U.S.C. § 841] is a sentencing factor that may be determined by a

preponderance of the evidence," rather than determined by a jury beyond a reasonable doubt. Id.

at 32-33. The Court added: "We have held that Apprendi's holding applies only when the

disputed fact enlarges the applicable statutory maximum and the defendant's sentence exceeds

the original maximum." Id. at 33 (quotation marks omitted). Similarly, the First Circuit's holding in United States v. LaFreniere, 236 F.3d 41, 49-50 (1st Cir. 2001), was good law. In that case, the Court stated: "Our holding today is that no Apprendi violation occurs when the district court sentences the defendant within the statutory maximum, regardless that drug quantity was never determined by the jury beyond a reasonable doubt." LaFreniere, 236 F.3d at 50; see also United States v. Díaz-Arias, 717 F.3d 1, 25 (1st Cir. 2013) (citing Goodine with approval on the issue addressed here); United States v. Dávila-Nieves, 670 F.3d 1, 11 n.8 (1st Cir. 2012) (citing LeFreniere with approval on another point of law). The issue whether counsel's representation was deficient must be reviewed in the context of the state of the law at the time of the representation. Here, counsel's decision not to appeal this issue was not deficient given that, at the time, findings that increased in the statutory mandatory minimum sentence did not trigger a jury right.

A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. Strickland, 466 U.S. at 697. In this case, however, I also conclude that because the issue lacked merit, Al-Rikabi suffered no prejudice from his attorney's failure to press the issue on appeal. See Moreno-Espada v. United States, 666 F.3d 60, 65 n.4 (1st Cir. 2012).

**2. Ineffective Assistance in Challenging the Sufficiency of the Evidence of Drug Type and Quantity**

Al-Rikabi argues that counsel was ineffective in failing to argue that the government did not meet its burden of proving that the 200 additional grams of cocaine for which he was responsible were crack rather than powder. (Motion at 16-17.) Al-Rikabi argues that the evidence of drug quantity and type was speculative, and counsel was ineffective for not making this point in his first direct appeal.

The difference between crack cocaine and powder cocaine is significant at sentencing because crimes involving possession and distribution of crack are punished more severely than crimes involving powder.  See 21 U.S.C. § 841(b); Dorsey v. United States, 132 S. Ct. 2321, 2327 (2012).  At the initial sentencing, counsel argued Al-Rikabi's points concerning both quantity and the type of cocaine.  (Sentencing Tr. 9/2/2008 at 41-44.) The sentencing court, however, determined that the additional 200 grams were crack cocaine.  (Sentencing Tr. 10/15/2008, at 10.)  The court based this finding on the videotaped confession of Al-Rikabi's supplier, Ramnath.  (Sentencing Tr. 9/2/2008 at 47.)  The court noted its reasons for giving more weight to Ramnath's confession than his later testimony.  Those reasons included that the confession was close in time to the incidents involved and that Ramnath had a motivation for changing his story later on.  (Sentencing Tr. 9/2/2008 at 47.)

Counsel did not appeal the court's finding on the quantity, but an appeal would have been without merit in any event.  The sentencing court's finding of 200 grams of crack cocaine is supported by record evidence of a type that the First Circuit has held is adequate.  The First Circuit has held that the testimony of cooperating witnesses may "alone be sufficient to support a district court's quantity determination."  United States v. Rivera Calderon, 578 F.3d 78, 100 (1st Cir. 2009).  "The calculation of drug quantities is not an exact science, and a sentencing court charged with that responsibility need not be precise to the point of pedantry.  Rather, a sentencing court may make reasoned estimates based on historical data."  United States v. Platte, 577 F.3d 387, 392 (1st Cir. 2009).  The sentencing court is given "wide latitude in determining the probative value of conflicting testimony."  Id. at 393.  At Al-Rikabi's sentencing, the court did not err in choosing to rely on Ramnath's video confession or in giving the confession more

weight than Ramnath's later testimony, and therefore there was no basis for an appeal of that issue.

Counsel is not required to press meritless appeals. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Because the issue lacks merit, Al-Rikabi has failed to demonstrate either (1) that "counsel's representation fell below an objective standard of reasonableness" when counsel decided not to raise the issue of drug quantity on appeal, or (2) that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Turner, 699 F.3d at 584.

### 3. Ineffective Assistance Concerning Safety Valve Relief

I first explain what safety valve relief is and whose burden it is to assert it, and then address the parties' arguments. Ultimately, I conclude that Al-Rikabi has not met his prima facie burden to allege either deficient performance or prejudice because he has not alleged what information and evidence he would have provided to the government in order to meet the requirements for safety valve relief. See Rivera Alicea v. United States, 404 F.3d 1, 4 (1st Cir. 2005) (referring to the petitioner's section 2255 allegations has having made a prima facie showing).

"Under the safety-valve provision, if the sentencing court makes five specific factual findings, it may impose a sentence below the mandatory minimum that would otherwise apply." United States v. Harakaly, 734 F.3d 88, 92 n.2 (1st Cir. 2013) (citing 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2). Title 18 U.S.C. § 3553(f) states in pertinent part that for offenses under 21 U.S.C. §§ 841, 846, among other statutes, the court

shall impose a sentence pursuant to [the sentencing guidelines] without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that –

> (1)     the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

> (2)     the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

> (3)     the offense did not result in death or serious bodily injury to any person;

> (4)     the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise . . . ; and

> (5)     not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f).[3]

Although Al-Rikabi's claim touches upon both the fourth and fifth requirements, the main issue here concerns the fifth requirement, which is that the defendant fully and truthfully debrief the government about the crime. "[T]he safety valve may be available to those who put the government through a trial or wait until the last minute to disclose useful information . . . ." United States v. Woods, 210 F.3d 70, 76 (1st Cir. 2000). "The provision does not distinguish 'between defendants who provide the authorities only with truthful information and those who provide false information before finally telling the truth.'" United States v. Rodriguez, 676 F.3d

---

[3]     Under the current version of the sentencing guidelines, there is an additional benefit of a reduction of two points in the offense level for defendants who meet the safety valve requirements. U.S.S.G. § 2D1.1(b)(16); see United States v. Rodriguez, 676 F.3d 183, 186 n.1 (D.C. Cir. 2012). Al-Rikabi's sentencing and resentencing pre-dated this provision, however.

183, 190-91 (D.C. Cir. 2012) (quoting United States v. Schreiber, 191 F.3d 103, 106 (2d Cir. 1999)).

The First Circuit has described the safety valve's opportunity to cure prior "prevarication or incompleteness" as a "generous standard" that may not be available if the defendant has so severely undermined his own credibility that the court cannot be sure he has made a full disclosure. United States v. Bermúdez, 407 F.3d 536, 543-44 (1st Cir. 2005) ("noting that [a] defendant who changes his story to match the government's evolving knowledge of the events runs the risk of undermining his credibility") (citing Schreiber, 191 F.3d at 107). "It was permissible for the court to infer from [the defendant's] inconsistency, as it seems to have done, that his credibility was so shaky that no version yet rendered could be taken as true and complete." Bermúdez, 407 F.3d at 543. The Court has explained that "[s]ection 3553(f)(5) contemplates an affirmative act of cooperation with the government no later than the time of the sentencing hearing." United States v. Wrenn, 66 F.3d 1, 3 (1st Cir. 1995). Contrary to the government's assertion that a defendant's information must be useful to the government in order to meet the requirement for safety valve relief, section 3553(f)(5) provides that "the fact that the defendant has no relevant or useful other information to provide" does not preclude safety valve relief. (Response at 20, ECF No. 251.) At sentencing, the burden is on the defendant to prove by a preponderance of the evidence that safety valve relief should apply. Harakaly, 734 F.3d at 98.

Al-Rikabi argues that counsel was ineffective for failing to inform him about the availability of safety valve relief. (Motion at 17-18, Reply at 6-7.) He asserts that if he had been informed of safety valve relief and its requirements by counsel before trial, he would have

pleaded guilty rather than go to trial.[4] (Motion at 17, Reply at 6.)  He asserts that counsel failed to advise him, not only before trial, but also after he won his first direct appeal and was about to undergo resentencing. (Motion at 17, Reply at 6.)  Al-Rikabi may also be making an implicit argument that if counsel had advised him about safety valve relief requirements very early on and he had pleaded guilty, that outcome would have eliminated the trial testimony that the sentencing court found to be perjurious.  He might also have adapted his statements in sentencing with a view to coming across as more credible.  This might then have helped him establish a better foundation for obtaining safety valve relief.

The government argues that for two reasons, Al-Rikabi cannot demonstrate either ineffective assistance or prejudice.  First, at the time Al-Rikabi was first sentenced in 2008, he would have been disqualified from safety valve relief because the court found that he had a managerial role in the criminal activity.  The government argues that Al-Rikabi's counsel could plausibly have decided that discussion of safety valve relief would be useless in these circumstances, and therefore Al-Rikabi cannot demonstrate either deficient performance or prejudice. (Response at 19.)  Second, the court found at sentencing that Al-Rikabi's testimony at trial was perjurious and his sentencing statements were inconsistent, and it therefore determined that he was not eligible for a variant sentence. (Response at 20-21; Sentencing Tr. 10/15/2008 at 11-13.)

The case of Rodriguez, which involved an ineffective assistance claim decided recently by the District of Columbia Circuit on direct appeal, discusses the safety valve requirements in ways that are helpful to the analysis here, even though that case is ultimately distinguishable.

---

[4]     Notably, Al-Rikabi does not allege that counsel did not discuss with him the option of entering a guilty plea.  Al-Rikabi obviously knew he could plead guilty, and his allegations do not support a claim that counsel did not explore that option with him.  His complaint is merely that counsel did not specifically advise him of the safety-valve provision.

676 F.3d 183.  In <u>Rodriguez</u>, the defendant argued in his initial sentencing memorandum for safety valve relief based on an alleged truthful debriefing to the government.  <u>Rodriguez</u>, 676 F.3d at 186.  The court held an evidentiary hearing on the safety valve issue and found that Rodriguez had not been truthful.  <u>Id.</u> at 187.  In fact, the court determined that an increase in the offense level for obstruction of justice might be warranted, given the defendant's false testimony during the sentencing hearing, and it invited supplemental sentencing memoranda from the parties on that issue.  <u>Id.</u>

Sometime later, Rodriguez had another debriefing with the government.  The government then made a filing with the court in which it acknowledged that Rodriguez had finally provided a truthful debriefing.  <u>Id.</u>  At the final sentencing hearing, though, the government argued against safety valve relief on the basis that the eventual truthful debriefing must be balanced against both the defendant's prior perjury during the safety valve evidentiary hearing and the defendant's failure to accept responsibility.  <u>Id.</u> at 188.  Counsel for the defendant did not advocate for safety valve relief at the final sentencing hearing.  <u>Id.</u> at 189-90.  The court held that this was one of those "rare circumstances" in which a claim of ineffective assistance could be decided on direct appeal because the record "conclusively shows that Rodriguez's lawyer's failure to reassert Rodriguez's eligibility for safety valve relief after Rodriguez truthfully debriefed constitutes ineffective assistance of counsel."  <u>Id.</u>

The D.C. Circuit held that the defendant's past lies did not preclude safety valve relief even though they may preclude other sentencing reductions such as a reduction for acceptance of responsibility.  <u>Id.</u> at 190-93.  The court held that (1) Rodriguez was eligible for safety valve relief; (2) the court must apply safety valve relief because the statute provides that when the defendant is eligible for it, it is mandatory rather than discretionary; and (3) there was a

reasonable probability that the defendant would have received a lower sentence if the safety valve provision had been applied. Id. at 191-92. On that basis, counsel's failure to argue for it at the final sentencing hearing constituted ineffective assistance of counsel. Id. at 189-90. On the other hand, the Court affirmed the denial of a sentencing decrease for acceptance of responsibility, noting that "Rodriguez may have decided to cooperate with the Government to get a sentencing benefit without fully accepting responsibility for the crime" and holding that the sentencing court did not abuse its discretion as to the issue of acceptance of responsibility. Id. at 192-93.

Here, counsel did not have the obligation to advise Al-Rikabi about safety valve relief when it appeared to be precluded based on the issue of Al-Rikabi's managerial role in the offense. In theory, counsel might have anticipated that Al-Rikabi might appeal and win the issue of the managerial role, thus opening up the possibility of safety valve relief as long as Al-Rikabi had not destroyed his credibility in the meantime. But the standard for demonstrating deficient performance is not that counsel failed to anticipate a particular eventuality when advising the client. Rather, counsel's representation must fall "'below an objective standard of reasonableness.'" Pena v. Dickhaut, 736 F.3d 600, 605 (1st Cir. 2013) (quoting United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012) (quotation marks omitted)). Before the first appeal was decided, safety valve relief was precluded because Al-Rikabi had not met the requirement that he not have a managerial role in the crime. A decision by counsel not to advise Al-Rikabi about safety valve relief, when relief was not on the table at that point, may not have been ideal but it was objectively reasonable.

After the appeal, the only safety valve requirement standing in Al-Rikabi's way was the one requiring him to provide a full and truthful debriefing to the government. At this point, too,

counsel may in theory have had an obligation (1) to advise Al-Rikabi that he could obtain sentencing benefits by providing the government with a full and truthful debriefing either before or at resentencing, (2) to hear what Al-Rikabi's debriefing would be, (3) to advise him of the risk, if any, that the government and the court might think his debriefing version was untrue or incomplete, and (4) to make a recommendation to Al-Rikabi about whether to attempt a debriefing. However, counsel's obligation to advise Al-Rikabi about safety valve relief before resentencing is not clearcut, given that the court had already found that Al-Rikabi's credibility was significantly compromised. See Bermúdez, 407 F.3d at 543-44. There would certainly have been a risk that, if Al-Rikabi attempted a debriefing, the court would conclude that it could not determine whether Al-Rikabi told the truth, or worse, that Al-Rikabi had actually obstructed justice. See Rodriguez, 676 F.3d at 187.

I cannot determine from Al-Rikabi's allegations whether counsel was deficient for failing to advise him about safety valve relief. See Davis v. United States, 2013 WL 841476, at *14, 2013 U.S. Dist. Lexis 30672, at *41 (E.D. Tenn. Mar. 6, 2013) (noting that the petitioner filed a sealed affidavit which the court presumed set out the details of what he would have told the government in a debriefing). "To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." David v. United States, 134 F.3d 470, 478 (1st Cir. 1998). In the absence of any allegations from Al-Rikabi as to what information and evidence he would have provided the government in a debriefing, I cannot conclude that he has made a prima facie showing that counsel was deficient, even if I accept as true, for present purposes, Al-Rikabi's allegation that counsel did in fact fail to advise him about safety valve relief. See Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (noting that a district court may forego an evidentiary hearing on a

claim of ineffective assistance when the petitioner's allegations, "'even if true, do not entitle him to relief'" (quoting David, 134 F.3d at 477 (quotation marks omitted))).

Al-Rikabi must also demonstrate prejudice. In other words, he must provide factual allegations that, if proven, would constitute grounds for determining that there is a reasonable probability that counsel's advice would have led to safety valve relief for Al-Rikabi. See Turner, 699 F.3d at 584; Bernier v. Moore, 441 F.2d 395, 396 (1st Cir.1971) (per curiam) (holding that it is within the discretion of the district court to refuse to order a hearing concerning habeas relief when the petitioner has failed to inform the court of the factual basis for the allegation that counsel's act or omission constituted prejudicial misconduct); see also Polanco v. United States, No. 92–2054, slip op. at 2, 989 F.2d 484, 1993 WL 72417, at * 1, 1993 U.S. App. Lexis 4871, at * 3 (1st Cir. Mar.15, 1993) (per curiam) (applying the same standard to a section 2255 motion). When the court does not have before it the defendant's allegations as to what he would have said in substance in the debriefing, the court cannot evaluate whether a debriefing might have resulted in safety valve relief. Here, because Al-Rikabi does not say what he would have said in a full and truthful debriefing, there is no basis for a finding of prejudice, i.e., no demonstration of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Turner, 699 F.3d at 584.

### 4. Ineffective Assistance Concerning A Motion to Suppress

Al-Rikabi argues that counsel was ineffective for failing to move to suppress evidence obtained as a result of a global-positioning-system (GPS) tracking device that law enforcement installed on his vehicle in 2007 without first obtaining a warrant. In 2012, the Supreme Court held that installing a GPS device on a vehicle constitutes a search for purposes of the Fourth Amendment. United States v. Jones, 132 S. Ct. 945, 949 (2012). Of course, the suppression

issue applicable to Al-Rikabi's claim of ineffective assistance concerns the pre-Jones state of the law on warrantless GPS devices. The ineffective-assistance issues are (1) whether, in light of the state of the law at the time the GPS was placed, counsel's decision not to move to suppress the evidence fell "below an objective standard of reasonableness" and (2) whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Turner, 699 F.3d at 584.

The First Circuit recently characterized the pre-Jones state of the law in this circuit as settled; the Court noted that Jones "upended the settled rules on which the police relied." United States v. Sparks, 711 F.3d 58, 68 (1st Cir. 2013). In Sparks, the Court noted that before Jones was decided, "the agents' attachment and monitoring of [a] GPS tracker was authorized by settled, binding circuit precedent." Id. at 63. Thus, in Sparks, the First Circuit held it need not reach the question whether the placement in 2009 of a GPS tracker on a vehicle constituted a Fourth Amendment search, in light of Jones, because in any event the good faith exception to the exclusionary rule applied. Id. at 59, 62-63 (noting that under the good faith exception, "'searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule'") (quoting Davis v. United States, 131 S. Ct. 2419, 2423-24 (2011)). The First Circuit affirmed the denial of the defendant's motion to suppress. Id. at 68.

Although Sparks involved a direct appeal of the denial of a motion to suppress rather than a claim of ineffective assistance of counsel, the Court's holding in Sparks makes it clear that in the First Circuit, a pre-Jones placement of a GPS device on a car was not considered a search and was authorized by settled precedent. Id. at 63. Thus, a motion to suppress evidence obtained as a result of the GPS device would have failed for lack of merit. Counsel is not required to file a motion regardless of its merit. Knowles, 556 U.S. at 123. Consequently, counsel's decision not to

move to suppress cannot, in these circumstances, be considered to have fallen "below an objective standard of reasonableness," and there is no prejudice to Al-Rikabi that arose from the failure to file a motion to suppress.  See Turner, 699 F.3d at 584.

### Conclusion

For the reasons stated above, no evidentiary hearing is warranted under Rule 8 of the Rules Governing Section 2255 Cases and I recommend that the Court deny Al-Rikabi's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 3, 2014